UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHALED ABDO AHMED,
and 85 OTHER PERSONS,

                      Plaintiffs,                            Case Number 19-11138

v.                                                     Honorable David M. Lawson

STEPHEN MILLER, DONALD J.
TRUMP, MATTHEW WHITAKER,
MICHAEL POMPEO, U.S. DEPARTMENT
OF STATE, U.S. DEPARTMENT OF
JUSTICE, U.S DEPARTMENT OF
HOMELAND SECURITY, LEE FRANCIS
CISSNA, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES, KEVIN K.
MCALEENAN, U.S. CUSTOMS AND
BORDER PROTECTION, DANIEL COATS,
OFFICE OF THE DIRECTOR OF NATIONAL
INTELLIGENCE, LARRY EDWARD
ANDRE, JR., DEVIN KENNINGTON,
CHAPMAN GODBEY, RYAN NOLAN, and
U.S. EMBASSY IN DJIBOUTI,

                      Defendants.

_____/

## SECOND ORDER DISMISSING WITHOUT PREJUDICE
## CLAIMS OF CERTAIN PLAINTIFFS

A United States citizen (or a lawful permanent resident of the United States) may seek

permission for a non-citizen "immediate relative" to enter the country by filing a petition with the

Attorney General using immigration form I-130. 8 U.S.C. § 1154(a)(1)(A)(i). If the Attorney

General approves, the petition is forwarded to the Department of State for further processing by a

consular officer. *Id.* § 1154(b). Once the non-citizen relative completes a visa application, the

consular officer decides whether to issue or refuse the visa based on certain statutory criteria. 22

C.F.R. § 42.81(a); *see* 8 U.S.C. § 1182(g).

The plaintiffs in this case all complain about delays and denials of their visa applications for I-130-petitioning relatives in a specific consular office in the country of Yemen. That process was complicated by the issuance of Presidential Proclamation 9645, 82 Fed. Reg. 45161 (Proc. 9645), which prohibits the entry of immigrants and non-immigrants from Yemen and other countries. Proc. 9645 § 2(b). The Proclamation allows, however, that "a consular officer, or the Commissioner, United States Customs and Border Protection (CBP), or the Commissioner's designee, as appropriate, may, in their discretion, grant waivers on a case-by-case basis to permit the entry of foreign nationals for whom entry is otherwise suspended or limited. . . ." *Id.* § 3(c). For most of the plaintiffs in this case, the applications were denied but are under review for a waiver, relegated to a purgatory known as "administrative processing." For a waiver to be granted, the applicant must satisfy the consular officer that "(A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest." *Ibid.*

The original plaintiffs in this case were more than 220 U.S. Citizens and their non-citizen relatives from Yemen. They allege that they have suffered "a range of ongoing harms because of Defendants' failure to issue guidance and issue waivers under" Proclamation 9645. Their stated goal via this lawsuit is to "challenge the unreasonable denial and delay in adjudicating their immigrant visa applications although all of the Plaintiffs have clearly demonstrated that they qualify for waivers under the Proclamation." In their prayer for relief, the plaintiffs ask for mandamus, declaratory, and injunctive relief, which ranges from compelling the defendant to adjudicate the waiver applications, compelling the Department of Homeland Security to promulgate appropriate regulations clarifying the Proclamation's directives, declaring

Proclamation 9645 unconstitutional, and ordering the removal of individual defendant Chapman Godbey "from any post where he serves as a consular officer."

As noted, the waiver determinations must be made "on a case-by-case basis." Because of the unusual decision to join in a single case over 220 plaintiffs with different backgrounds and circumstances, the Court ordered plaintiffs' counsel to show cause why the Court should not dismiss the claims of all but the lead plaintiff for improper joinder. The response does not convince the Court that joinder is proper, even with the withdrawal of claims by 132 of the original plaintiffs. Therefore, the case may proceed with the claims of now-lead plaintiff Khaled Abdo Ahmed and his family only. The other plaintiffs' claims will be dismissed without prejudice to them bringing separate complaints for themselves in individual cases.

I.

The pleadings in this case comprise more than 2,300 pages, and the plaintiffs have inquired about submitting hundreds or thousands more pages of materials that they contend support their claims. As just one illustration of the variability of the circumstances of the I-130 petitioners, the original lead plaintiff Abdul Kader Ahmed Baaghil (part of the group labeled by plaintiffs as "Family 1") alleges that he initiated the process of requesting a spousal visa for his wife via an I-130 petition submitted on March 7, 2017. By contrast, plaintiff Nabil Saaed (part of so-called "Family 36") alleges that he initiated a visa application for two of his step-daughters on October 9, 1997 — more than two decades before Baaghil and his wife entered the immigration pipeline via their spousal application, and equally as long before the 2017 Presidential Proclamation that forms the centerpiece of the plaintiffs' claims was even issued.

In December 2019, the plaintiff filed a notice voluntarily dismissing the claims of 132 plaintiffs, including original lead plaintiff Abdul Kader Ahmed Baaghil and his family. Eighty-six plaintiffs still remain.

Due to the extreme multiplicity of the parties and claims, and the varying individual circumstances, it is impossible within any reasonable span of pages to summarize the factual background of the individual claims of all the petitioners, who now are more than 80 persons involved in more than 40 distinct immigration proceedings. However, for the purpose of addressing the joinder issue, below is a summary of the facts alleged by the new lead plaintiff, Khaled Abdo Ahmed, regarding the handling of Mr. Ahmed's application for a spousal visa.

According to the complaint, Mr. Ahmed is the husband of plaintiff Makelah Ali Al Wahasi. The couple have two children: plaintiffs Akram Khaled Ali and M.K.A., a minor. Ahmed filed I-130 petitions on behalf of his wife and children in 2008, which were assigned file numbers SAA2010610011, SAA2010610012, and SAA2010522016109. The petitions subsequently were approved. Makelah Ali Al Wahasi, Akram Khaled Ali, and M.K.A. had an immigrant visa interview at the U.S. Embassy in Kuala Lumpur on July 14, 2016, and a second interview on May 31, 2017. At each interview they were given forms indicating that their visas were refused and were told that additional documents were needed regarding the citizenship of Khaled Abdo Ahmed's father. But a third immigrant visa interview was conducted in April 2018 at which the consular officer stated that "everything was fine" and that the plaintiffs "would receive a call in a week." They subsequently received no word about their visa status, and the visas presently are in in administrative processing status. In a declaration from an attorney advisor employed by the Department of State, the government's counsel attested that a review of the consular file for Abdo's case indicated that Mr. Ali's visa was refused three times, after separate interviews, most recently

on July 14, 2016 on the basis that more information was needed to establish Ali's identity. The government's counsel did not attest to any further details of the other two petitions.

The complaint recounts similar stories of other families with different application dates and different personal circumstances. The common thread is that visas have not been issued for non-citizen relatives on I-130 petitions, with many seeking waivers after initial denials under Proclamation 9645.

The plaintiffs filed their complaint on April 18, 2019 and contemporaneously filed an "emergency" motion for preliminary injunction. The Court issued an order to show cause regarding improper joinder on May 1, 2019 and the plaintiffs filed their response to the show cause order on May 15, 2019. Later, the Court denied the plaintiffs' motion for an order permitting service of copies of the summons and complaint in electronic form, because plaintiffs' counsel had made no attempt to secure consent to electronic service from counsel for any of the government defendants.

The Court scheduled a hearing on the motion for preliminary injunction on August 8, 2019, but when counsel for the plaintiffs and the government appeared for the hearing the Court learned that the plaintiffs had not completed service of the summons and complaint on any of the defendants. The Court then granted an oral motion to extend the summons and the time for completion of service. Most of the defendants subsequently were served, and the government later filed a motion to dismiss raising various challenges to the sufficiency of the pleadings.

After the motion to dismiss was filed, the parties submitted a stipulation for the voluntary dismissal without prejudice of the claims brought by 132 of the 218 original plaintiffs. The Court entered an order dismissing the claims of those plaintiffs on December 17, 2019. After the

voluntary dismissal of 132 of the original plaintiffs, including then-lead plaintiff Abdul Baaghil, the lead plaintiff now is Khaled Abdo Ali Ahmed.

The complaint pleads various counts for: (1) violation of the Administrative Procedures Act, 5 USC 702 (Count One), (2) violation of the Immigration and Nationality Act, 8 U.S.C. § 1152(a)(1)(A) (Count Two), (3) procedural and substantive due process violations under the Fifth Amendment (Counts Three, Four, and Six), and (4) "Ninth Amendment Violation" (Count Five). The plaintiffs seek a writ of mandamus commanding the defendants "to develop guidance on the waiver process and to receive and fully and fairly adjudicate applicants' requests for waivers under the Proclamation" (Count Seven), and a declaratory ruling that "the Defendants have severally and jointly violated federal regulations and Plaintiffs' due process rights" (Count Eight). In a trailing non-substantive count the plaintiffs also demand recovery of their attorney fees under the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412 (Count Nine).

II.

Federal Rule of Civil Procedure 20 states that: "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). The two components of the test used by courts to determine proper joinder of plaintiffs under Rule 20 are (1) allegations that the claims stem from the same events or series of events; and (2) "there is at least one common question of law or fact linking all claims." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010). "However, even if this test is satisfied, district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Ibid.*

(citations omitted). If the Court finds that any excess parties are improperly joined, "the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs." *Cruz v. Bristol-Myers Squibb Co.*, 699 F.3d 563, 569 (1st Cir. 2012). Federal Rule of Civil Procedure 21 furnishes additional authority for a court "on its own" to "add or drop a party" "on just terms." *Allsup's*, 600 F.3d at 521 (quoting Fed R. Civ. P. 21).

Acknowledging Rule 20(a)'s requirements, the plaintiffs argue that the unitary transactions or occurrences at issue are "defendants' discriminatory policies," and the "waiver process under the Proclamation." They contend that they do not need to establish any individual circumstances to advance their claims, because the defendants have issued "blanket denials" of visa applications before allowing the petitioners to submit information establishing their eligibility for a waiver under the Proclamation.

The wide-ranging and voluminous allegations of individual circumstances in the pleadings here amply suggest that the plaintiffs' attempt at joinder is improper because their claims do not arise from any single occurrence or series of occurrences, and the merits of their procedural and constitutional claims will turn on the specific circumstances surrounding the adjudication of each of their individual petitions. Although the plaintiffs present a common claim relating to the validity of Proclamation 9645 and the practices adopted thereunder, in the end they may obtain relief only if they can show that the delay in processing visa applications and waivers is "unreasonable." *See*, *e.g.*, *Ghadami v. United States Dep't of Homeland Sec.*, No. 19-00397, 2020 WL 1308376, at *6-7 (D.D.C. Mar. 19, 2020); *Bagherian v. Pompeo*, --- F. Supp. 3d ---, No. 19-1049, 2020 WL 674778, at *4-6 (D.D.C. Feb. 11, 2020); *Alharbi v. Miller*, 368 F. Supp. 3d 527, 545 (E.D.N.Y. 2019).

On similar facts, the Ninth Circuit affirmed a district court's decision to dismiss without prejudice the claims of more than 50 individual plaintiffs seeking mandamus relief relating to their immigration petitions. That court explained that "the existence of a common allegation of delay, in and of itself, does not suffice to create a common transaction or occurrence." *Coughlin v. Rogers*, 130 F.3d 1348, 1350-51 (9th Cir. 1997). Addressing the second element, the court observed that "each applicant or petitioner presents a different factual situation. Therefore, each must receive personalized attention by the INS and, ultimately, by the Court. Accordingly, there can be no common issues of fact or law." *Ibid.*; *see also Cruz*, 699 F.3d at 569 ("It appears that each appellant lost his job under different circumstances and each has distinct legal claims against appellees. Although the rules governing party joinder are construed liberally for the sake of convenience and economy, we discern no abuse of discretion in the district court's decision to sever Diaz and Lasanta and dismiss their claims without prejudice."); *Allsup's*, 600 F.3d at 522 ("[A]ssuming arguendo that Allsup's company-wide policies allow Appellants to satisfy Rule 20's transaction test, denying joinder in this case would still not be an abuse of discretion. As explained above, district courts have considerable discretion to deny joinder when it would not facilitate judicial economy and when different witnesses and documentary proof would be required for plaintiffs' claims.").

Faced with similar attempts by other plaintiffs to pursue bulk pleadings covering numerous claims against scores of unrelated *defendants*, the federal courts readily have found that joinder was improper notwithstanding apparent common issues of fact or law, where the claims necessarily arose from entirely separate transactions or occurrences, regardless of their similarity. *E.g.*, *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014) ("To paraphrase an analogy offered by amicus counsel at oral argument, two BitTorrent users who download the same

file months apart are like two individuals who play at the same blackjack table at different times. They may have won the same amount of money, employed the same strategy, and perhaps even played with the same dealer, but they have still engaged in entirely separate transactions. And simply committing the same type of violation in the same way does not link defendants together for the purposes of joinder.").

Moreover, contrary to the plaintiffs' position, allowing this case to proceed as filed would violate the principles of judicial resource allocation embodied in the separate docketing and random assignment protocols which are employed by federal courts to ensure equitable distribution of judicial workloads and efficient, timely, and impartial resolution of cases. Among other things, the random assignment of cases is essential to maintaining public confidence in the impartiality of judicial proceedings. *Trump v. Committee on Ways & Means, U.S. House of Representatives*, No. 19-02173, 2019 WL 3388537, at *1 (D.D.C. July 25, 2019) ("The party requesting the related-case designation bears the burden of showing that the cases are related under [District of Columbia] Local Civil Rule 40.5. The burden on the party claiming relation is heavy as random assignment of cases is essential to the public's confidence in an impartial judiciary.") (citations and quotations omitted). That overriding concern yields typically only where significant economies of scale can be achieved through consolidation or reassignment to a single district judge of several cohesively overlapping proceedings. *Autumn Journey Hospice, Inc. v. Sebelius*, 753 F. Supp. 2d 135, 139-40 (D.D.C. 2010) ("The related case rule embodies the principle that in certain instances, the interests of judicial economy outweigh the fundamental interests served by the random assignment rule. Civil cases 'are deemed related when then the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction, or (iv) involve the validity or

infringement of the same patent.'" (quoting D.D.C. LR 40.5(a)(3)).  This judicial district, like others, maintains a uniform policy of randomly assigning all unrelated civil proceedings that do not expressly qualify for companion reassignment or consolidation.  E.D. Mich. LR 83.11(a)(1) ("In Ann Arbor, Detroit, Flint and Port Huron, the Clerk shall employ a random method for the assignment of civil cases (excluding social security cases and special civil cases) to Judges."); E.D. Mich. LR 83.11(b)(7)(A) ("Companion cases are cases in which it appears that: (i) substantially similar evidence will be offered at trial, or (ii) the same or related parties are present and the cases arise out of the same transaction or occurrence."); *see also, e.g.*, *Bettis v. Toys R Us*, 646 F. Supp. 2d 1273, 1303 (S.D. Fla. 2009) ("'All civil and criminal cases, including those within a weighted category, shall be assigned on a blind random basis so that the District workload is fairly and equally distributed among the active Judges irrespective of jury division.'" (quoting S.D. Fla. LR 3.4)).  If the claims of the plaintiffs here properly were filed as separate matters in the first instance, they would not qualify for companion treatment or consolidation because they do not arise between the same parties or involve the same transactions or occurrences, and they would require the presentation of an extreme multiplicity of varying proofs at trial to establish the individual circumstances of the plaintiffs.

As one federal court aptly explained, the sort of bulk pleading at issue here, undertaken evidently merely for the convenience of counsel and not out of a genuine concern either for the rights of the parties or the burdens on the court, rather than facilitating judicial economy, in fact defeats and obstructs the orderly and economical adjudication scheme embodied in the federal rules and the administrative policies of the courts.  *In re M & L Bus. Mach. Co., Inc.*, 132 B.R. 433, 434-36 (Bankr. D. Colo. 1991) (citations and footnotes omitted).  Among the reasons the court cited for discouraging such practices were the unjustified avoidance of paying multiple filing

fees, docket complications arising from keeping track of multiple disputes captioned under one heading, the inconvenience among the multiple plaintiffs of having to endure discovery proceedings and hearings on claims having little or nothing to do with them individually, interfering with the court's manner of apportioning its workload, and skewing case-filing statistics maintained by the Administrative Office of the United States Courts. *Ibid.*

All of those factors apply with equal force here. The plaintiffs have identified an issue that is common to their claims, but each plaintiff family has a separate case to plead. And although it is true that a decision on the common issue of the validity of the government's manner of application of Proclamation 9645 will impact in some way each plaintiff groups' individual case, it will not necessarily be dispositive. Each group's claim will stand or fall on each one's individual circumstances. Adjudicating the claims of 86 separate plaintiffs in a single lawsuit would do very little "to secure the just, speedy, and inexpensive determination" of each plaintiff's individual claim. Fed. R. Civ. P. 1.

The plaintiffs contend that filing separate actions would be financially burdensome for them individually. But, as they concede in their response to the order to show cause, relief from the financial burden of the required filing fee readily is available to them via 28 U.S.C. § 1915, which requires the Court to waive the fee for any litigant upon a satisfactory showing that he or she lacks the means to pay.

The plaintiffs, of course, have no inherent right to legal representation in any civil proceeding. *Childs v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987) ("'[A]ppointment of counsel in a civil case is . . . a matter within the discretion of the court. It is a privilege not a right.'"). Nevertheless, plaintiffs' counsel also represents in the response that she has undertaken to represent all of the petitioners on a *pro bono* basis, so there appears to be no tangible concern that

any would be deprived of able legal counsel to advance their claims. In short, the action appears to have been filed as it was merely for the convenience of counsel; allowing the entirely separate claims to proceed improperly in a single action would not serve any legitimate interests in the realm of fairness or judicial efficiency.

III.

Because joinder of all the claims is improper, the Court will terminate the action as to all but the new lead plaintiff, Khaled Abdo Ali Ahmed, and his family.

Accordingly, it is **ORDERED** that the claims brought by the following plaintiffs all are **DISMISSED WITHOUT PREJUDICE**: Gamil Mosad Meazeb, Faisal M. Mozeb, Salwa Muammar Z. Alsaedi, Mohammed Thabit Al-Saidi, Abdulsalam Saleh Abdullah Nasser, Adel Mohamed Assana, M.A.A. (1), Bashar Hauter, Wasimah Abdo Aawdi, Saleh A. Muthana, Waleed S. Muthana, Abdel Rahman Ahmad, Noorah Ahmed Abdo, Abdulla Kassim, Anisa Kassem, Nabil Mijalli, Donia Dahan Hamood Glaimeed, Sami Mohamed Al Gumaee, Hagar Kassim Muleh, Khaled Samir Nagi, Yaswer Moqbel Alkaboss, Saleh Ali Mugammal, Fuad Alamrani, Qaflah Aljunaid, Walid Fara, Ghadir Khazendar, Seterallah Al-Dharhani, Alawi Saleem Ali, Zakiah Al Daeri, Abdullah M. Issa, Nada M. Haydera, A.I. (1), A.I. (2), A.I. (3), Saleh Mohamed Maflahi, Zekra Ahmed Maflahi, Ashraf Mohamed Ghaithy, Makiah Fadhel Karaah, Tareq Aljahmi, Eman Algahmi, Sami Hendad, Wasmia Ahmed Mohammed Hendad, Asma Alghaithi, Hanood Nasser, Ali Saleh Ahmed Hezan, Mohamed Ali, Nour Alhuda Ali, Ali Saleh Alghaithy, Fatimah A. Alghaithy, Maged Abdulla, Abdulnasser Saleh, Noor Saleh Mohamed Obadi, Nabil Saeed, Mohamed Abdulla Abdulla, Mahwub Mohammed Abdulla, Hamoud Ali Aldailam, Omar Hamoud Ali Ali Aldailam, Ghadir Tawfik Abdo Naji, Yahya Mohammed, Najeeb H. Qahtan Al Saidi, Mariam N. Sheibi, Mohamed N. Ghaleb, Sameer S. Al Wageeh, Fatima M. Alnaham, Ali

Mohamed, A.A.S.A.M., H.A.S.A.M. (1), Nasser Yafai, Ahmad Nasser Zain Yafai, Entedhar Saleh Abobakr, Rateeb Abili, Yaman Al-Barmaki, Saddan Alradai, Arwa Almam, Kamar Obaid, Anis Rageh Kassem Mohammed, Hamood Alzokari, Mohamed Alzokari, Ahmed Mawri, Laila Al-Maweri, Mahyoub Balwi, Khulood Muharram, Yahya Alameri, Fatima Saleh, Qamar Ali M Hadi, Abdo Ahmed Taher Saied, Alaa Yahya Mohamed Taha, Waleed Yahya, Abdo Yehya Elfgeeh, Safa Abdo Yehya Elfgeeh, M.A.Y.E., A.E., L.F.M.K.M., Afrah Yahya, Mutleq Mohamed Mohamed Qahtan, Khulah Qahtan, Mutlak Qahtan, Yusra Qahtan, Waam Qahtan, Malayen Qahtan, Kahtan Qahtan, Nassim Qahtan, Yasmine Qahtan, Salamat Mohmmed Nagi, M.M. (1), M.M. (2), R.M., H.M. (1), A.M. (1), Aref Kassim, Ahmed Aref Kassim Albulasi, Muammar Almikhlafi, Marwa Almikhlafi, Muna Almikhlafi, M.A. (1), A.A. (4), A.A. (5), A.A. (6), E.A., A.A. (7), N.A., A.A. (8), S.A., Y.A., Shazia Ahmed Shaya Altam, H.O.H.A., K.O.H.A., Shafika Nsher Nagi, A.M.N.G., H.M.N.G., N.M.N.G., Asma Afef Saeed Yahya, B.A.N.Z.Y., A.A.M. (1), A.A.M. (2), A.A.M. (3), Y.A. (2), A.A. (9), R.R., A.M. (2), H.M. (2), M.A. (2), A.A. (10), Manal Farid Hussein Yahya, A.A.A.S., M.A.A.S., and G.A.A.S.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: April 7, 2020