UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KHALED ABDO AHMED, MAKELAH
ALI AL WAHASI, AKRAM KHALED ALI,
and M.K.A., a minor,

        Plaintiffs,                                                        Case Number 19-11138

v.                                                                            Honorable David M. Lawson

STEPHEN MILLER, DONALD J.
TRUMP, MATTHEW WHITAKER,
MICHAEL POMPEO, U.S. DEPARTMENT
OF STATE, U.S. DEPARTMENT OF
JUSTICE, U.S DEPARTMENT OF
HOMELAND SECURITY, LEE FRANCIS
CISSNA, U.S. CITIZENSHIP AND
IMMIGRATION SERVICES, KEVIN K.
MCALEENAN, U.S. CUSTOMS AND
BORDER PROTECTION, DANIEL COATS,
OFFICE OF THE DIRECTOR OF NATIONAL
INTELLIGENCE, LARRY EDWARD
ANDRE, JR., DEVIN KENNINGTON,
CHAPMAN GODBEY, RYAN NOLAN, and
U.S. EMBASSY IN DJIBOUTI,

        Defendants.
_____/

**OPINION AND ORDER DENYING MOTIONS FOR PRELIMINARY
INJUNCTION, FOR LEAVE TO FILE ADDITIONAL EXHIBITS, TO
TRANSFER VENUE, AND TO AMEND COMPLAINT, GRANTING MOTION TO
DISMISS, AND DISMISSING COMPLAINT WITH PREJUDICE**

Plaintiff Khaled Abdo Ahmed, a United States citizen, was one of over 220 plaintiffs who originally filed the present action seeking a judgment compelling the defendants to issue visas for non-citizen relatives to enter this country. The complaint was styled principally as a challenge to Presidential Proclamation 9645, in which the current administration initiated a policy of "enhanced vetting" for individuals attempting to emigrate from eight middle eastern countries into the United States. Since the lawsuit was commenced, the Supreme Court has held that Proclamation 9645 is

likely a valid exercise of presidential power, 132 original plaintiffs voluntarily dismissed their claims, and the Court dismissed all but the remaining plaintiffs for improper joinder. These plaintiffs now ask to transfer this case to the Southern District of New York, and they pursue their motion for a preliminary injunction. The defendants have moved to dismiss. The Court ordered supplemental briefs to address the current status of the visa applications. The responses indicate that the visa applications have been refused for valid reasons apart from Proclamation 9645, and the refusals are beyond the scope of permissible judicial review. The Court, therefore, will grant the defendants' motion to dismiss and deny the plaintiffs' remaining motions.

I.

According to the complaint, plaintiff Khaled Abdo Ahmed is the husband of plaintiff Makelah Ali Al Wahasi. The couple have two children: plaintiffs Akram Khaled Ali and M.K.A., a minor. Ahmed filed I-130 petitions on behalf of his wife and children in 2008, which were assigned separate file numbers. The petitions subsequently were approved.

Makelah Ali Al Wahasi, Akram Khaled Ali, and M.K.A. had an immigrant visa interview at the U.S. Embassy in Kuala Lumpur on July 14, 2016, and a second interview on May 31, 2017. At each interview they were given forms indicating that their visas were refused and were told that additional documents were needed regarding the citizenship of Khaled Abdo Ahmed's father. But a third immigrant visa interview was conducted in April 2018 at which the consular officer stated that "everything was fine" and that the plaintiffs "would receive a call in a week." They alleged in their original complaint that the visas then were mired in an "administrative processing" status.

In a declaration, Ahmed attested that he was born in Ibb, Yemen and came to America in 1989. Khaled Abdo Ahmed decl. ¶ 5, ECF No. 1-6, PageID.936. Ahmed filed I-130 petitions for his wife and children in 2008. Due to the desperate situation in Yemen, they moved to Malaysia

in 2016, and their applications were transferred to the U.S. embassy in Kuala Lumpur. *Id.* ¶¶ 12-13. Ahmed's wife and children went for interviews at the embassy on July 14, 2016, May 31, 2017, and April 2018. At the May 31, 2017 interview, the consular officer told Ahmed's wife "that they found a different name, Hameedi, for [Mr. Ahmed] in their file," and the officer "asked [the children] if that was an old name." *Id.* ¶ 16. The "family gave [the consular authorities] proof that we never used that name," and Ms. Ahmed "told them that we don't know that name [and] [w]e have always had our name." *Ibid.* The consular officer also asked if Ms. Ahmed "knew [her husband's] father," and she "told them that [Ahmed's] father had passed away in America," and she saw the father "for the first time when we sent his body to be buried in Yemen." *Ibid.*

Immigration documents submitted along with the declaration indicate that, on May 31, 2017, the plaintiff's son, M.K.A., was informed that his visa was refused because he was found ineligible under INA § 221(g), but the file was placed in administrative processing status to allow further information to be submitted. Letter dated May 31, 2017, ECF No. 1-6, PageID.928. Ahmed further attested that, "[i]n April 2018, [his] family went a third time for an interview at the U.S. Embassy in Kuala Lumpur," and, during that interview, "[t]he officers said that everything was good . . . everything was okay and we will give you a call in a week," but "[t]o this day, they still haven't called." Ahmed decl. ¶ 18, PageID.938. Later documents indicated that as of March 18, 2019, all three case files remained in "administrative processing" status. File Reports dated Mar. 18, 2019, ECF No. 1-6, PageID.930-34.

In a declaration from an attorney advisor employed by the State Department, the government's counsel attested to limited additional details from the consular file regarding the Ahmed family visa applications. As to Ahmed's son, Akram Khaled Ali, who was born in Yemen in 1995, government counsel attested that Ali's application for a visa was refused because his

identity was not sufficiently established, and that, because Ali was found ineligible under INA § 221(b), 8 U.S.C. § 1201(g), he could not be considered for a waiver under the proclamation. Chloe Dybdahl decl. ¶ 10, ECF No. 37-2, PageID.3828.

The government submitted two recent declarations by agency counsel in support of its opposition to the plaintiffs' motion to transfer venue and its supplemental brief. The State Department's attorney advisor, Chloe Dybdahl, attested to her review of the consular file and disclosed the following facts, which are undisputed. Decl. of Chloe Dybdahl, ECF No. 55-2, PageID.3981-3983. As noted above, three I-130 petitions were filed by Ahmed on behalf of his wife and children. All three applicants appeared for consular interviews on January 25, 2011 and July 14, 2016. After each interview, the visa applications were refused under INA § 221(g), 8 U.S.C. § 1201(g), on the basis that the applicants had failed to provide sufficient proof of identity to establish their familial relationships with Mr. Ahmed. Finally, on November 22, 2019, the consular officer again refused all three applications and returned them to USCIS. On December 3, 2019, the consulate sent a refusal letter to the applicants and their counsel. The refusal letter stated, as to all three petitions, that "[a]fter an interview [and] thorough review of your visa applications, the consular officer found that you are not eligible for the visa category in which you are applying." Letter dated Dec. 3, 2019, ECF No. 60-1, PageID.4018.

On February 19, 2020, the National Visa Center received all three applications and transmitted them to the USCIS Vermont Service Center. The applications arrived back at USCIS with recommendations by the consular officer that all three visas be revoked for failure to establish the identity of the non-citizen petitioners. Decl. of Judith Hochberg, ECF No. 59-1, PageID.4008-4009. The Section Chief of the Vermont Service Center attested that since the applications were received they were placed into the administrative pipeline for review, but action on them has been

delayed by the effect of the coronavirus pandemic, which severely has curtailed the ability of staff to access agency offices and paper file materials. Nevertheless, the applications are awaiting review in due course after other files which were returned at earlier times.

The original plaintiffs to this action comprised more than 220 persons from or residing in Yemen involved in more than 60 separate immigration petitions. They collectively filed their complaint on April 18, 2019 and contemporaneously filed an "emergency" motion for preliminary injunction.

The complaint pleads counts for: (1) violation of the Administrative Procedures Act, 5 USC 702 (Count One), (2) violation of the Immigration and Nationality Act, 8 U.S.C. § 1152(a)(1)(A) (Count Two), (3) procedural and substantive due process violations under the Fifth Amendment (Counts Three, Four, and Six), and (4) "Ninth Amendment Violation" (Count Five). The plaintiffs seek a writ of mandamus commanding the defendants "to develop guidance on the waiver process and to receive and fully and fairly adjudicate applicants' requests for waivers under the Proclamation [9645]" (Count Seven), and a declaratory ruling that "the Defendants have severally and jointly violated federal regulations and Plaintiffs' due process rights" (Count Eight). In a trailing non-substantive count the plaintiffs also demand recovery of their attorney fees under the Equal Access to Justice Act, 5 U.S.C. § 504, 28 U.S.C. § 2412 (Count Nine).

The Court issued an order to show cause regarding improper joinder on May 1, 2019 and the plaintiffs filed their response to the show cause order on May 15, 2019. Later, the Court denied the plaintiffs' motion for an order permitting service of copies of the summons and complaint in electronic form, because plaintiffs' counsel had made no attempt to secure consent to electronic service from counsel for any of the government defendants.

The Court scheduled a hearing on the motion for preliminary injunction on August 8, 2019, but when counsel for the plaintiffs and the government appeared for the hearing the Court learned that the plaintiffs had not completed service of the summons and complaint on any of the defendants. The Court then granted an oral motion to extend the summons and the time for completion of service. Most of the defendants subsequently were served, and the government later filed a motion to dismiss raising various challenges to the sufficiency of the pleadings.

After the motion to dismiss was filed, the parties submitted a stipulation for the voluntary dismissal without prejudice of the claims brought by 132 of the original plaintiffs. The Court entered an order dismissing the claims of those plaintiffs on December 17, 2019. After the voluntary dismissal of 132 of the original plaintiffs, including then-lead plaintiff Abdul Baaghil, Khaled Abdo Ahmed became the lead surviving plaintiff. On April 7, 2020, the Court issued an order dismissing without prejudice the claims of all remaining original petitioners except Ahmed and his family.

On May 7, 2020, after the Court dismissed without prejudice the claims of all but the new lead plaintiff Khaled Abdo Ahmed and his family, the plaintiffs filed a motion to transfer venue of this case to the Southern District of New York.

II.

The Immigration and Nationality Act, 8 U.S.C. § 1151 *et seq.*, allows certain persons to apply for entry to the United States based on their status as an "immediate relative" — children, spouses, and parents — of a United States citizen. *See* 8 U.S.C. § 1152(b)(2)(A)(i). The citizen-relative may file a petition with the Attorney General to classify the person as an "immediate relative," and does so by submitting Form I-130. 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. §

204.1(a)(1). After the petition is approved, admission to the United States must abide the issuance of a visa.

The visa application process begins with submission of the petition to the United States Citizenship & Immigration Service (USCIS) of the Department of Homeland Security (DHS), which arranges for an investigation of the facts stated in it by various government agencies. "After an investigation of the facts in each case . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title, . . . approve the petition and forward one copy thereof to the Department of State. The Secretary of State shall then authorize the consular officer concerned to grant the preference status." 8 U.S.C. § 1154(b).

"When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of INA and the implementing regulations, the consular officer must either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law." 22 C.F.R. § 42.81(a). Section 1201(g) of the INA states that: "No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." 8 U.S.C. § 1201(g). "The consular officer shall suspend action in a petition case and return the petition, with a report of the facts, for reconsideration by DHS . . . if the officer knows

or has reason to believe that . . . the beneficiary is not entitled to the status approved." 22 C.F.R. § 42.43(a).

After the plaintiffs' visa applications were refused initially, but before the final denial in November 2019, the administration issued Presidential Proclamation 9645 on September 24, 2017, titled "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats." 82 Fed. Reg. 45161. "The Proclamation (as its title indicates) sought to improve vetting procedures by identifying ongoing deficiencies in the information needed to assess whether nationals of particular countries present 'public safety threats,'" and "[t]o further that purpose, the Proclamation placed entry restrictions on the nationals of eight foreign states whose systems for managing and sharing information about their nationals the President deemed inadequate." *Trump v. Hawaii*, ---U.S.---, 138 S. Ct. 2392, 2404 (2018). "For [certain] countries that have information-sharing deficiencies but are nonetheless 'valuable counterterrorism partner[s]' (Chad, Libya, and Yemen), it restricts entry of nationals seeking immigrant visas and nonimmigrant business or tourist visas." *Id.* at 2405 (citing Proc. 9645 §§ 2(a)(i), (c)(i), (g)(i)).

"The Proclamation exempts lawful permanent residents and foreign nationals who have been granted asylum. § 3(b). It also provides for case-by-case waivers when a foreign national demonstrates undue hardship, and that his entry is in the national interest and would not pose a threat to public safety." *Id.* at 2406. For a waiver to be granted, the applicant must satisfy the consular officer that "(A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest." Proc. 9645 § 3(c)(i), (iv).

The original plaintiffs in this case — including Ahmed and his family —alleged that they have suffered "a range of ongoing harms because of Defendants' failure to issue guidance and issue waivers under" Proclamation 9645. Their stated goal via this lawsuit was to "challenge the unreasonable denial and delay in adjudicating their immigrant visa applications although all of the Plaintiffs have clearly demonstrated that they qualify for waivers under the Proclamation." In their prayer for relief, the plaintiffs ask for mandamus, declaratory, and injunctive relief, which ranges from compelling the defendant to adjudicate the waiver applications, compelling the Department of Homeland Security to promulgate appropriate regulations clarifying the Proclamation's directives, declaring Proclamation 9645 unconstitutional, and ordering the removal of individual defendant Chapman Godbey "from any post where he serves as a consular officer."

In their motion to dismiss, the defendants argue that the plaintiffs' claims for mandamus and under the Administrative Procedures Act are moot because the visas have been refused based on facially valid reasons. Mootness, of course, is a jurisdictional argument the government advances under Federal Rule of Civil Procedure 12(b)(1). *See Cartwright v. Graner*, 751 F.3d 752, 759 (6th Cir. 2014). And the government, citing Rule 12(b)(6), maintains that the plaintiffs have not stated a cognizable claim for relief because further judicial review of the merits of the visa decisions is barred by the doctrine of consular nonreviewability. Even in the case of determinations for waivers, the government contends that the delays are not yet extreme enough to sustain any plausible claim for unreasonable delay so as to warrant relief under either the APA or via mandamus. Finally, the government argues that the substantive due process and Ninth Amendment claims are non-starters because it is well settled that there is no recognized constitutional right of a citizen to have a non-citizen spouse or other family member admitted to the country.

It does not appear that Proclamation 9645 played any role in the determination of the Ahmed family visa petitions. It was not cited as a basis for refusal of any visa in any of the file materials that have been submitted. Instead, it appears that the principal basis for the refusal to issue a visa was due to the consular officer's concerns about the proof of identity of the relative applicants and their relationship to the petitioner. A petitioner's failure to establish a qualifying relationship with a U.S. resident provides a sufficient basis by itself for refusal of the I-130 petitions, because the alien family members would be "ineligible to receive a visa . . . under section 1182 of this title." 8 U.S.C. § 1201(g). Because the visas were refused on grounds other than Proclamation 9645, none of the plaintiffs' wide-ranging expositions against the proclamation and its alleged deficiencies have any bearing on this case.

In their initial voluminous pleading, the plaintiffs took the position that Proclamation 9645 was merely official cover for the State Department to issue "blanket" denials of all visa applications without any individualized consideration by consular officers. However, that claim does not hold up for these plaintiffs; the Ahmed petitioners admit that they received several interviews and that each time the applications were either "refused" or placed "on hold" because the consular officer determined that the applicants had not sufficiently established a family relationship with Mr. Ahmed.

Moreover, the affidavit of government counsel indicates that none of the Ahmed family have even been considered for waivers under Proclamation 9645, because they did not pass the preliminary threshold of establishing the basis requisite of familial relationship to a U.S. citizen or permanent resident. *See* Dybdahl decl. ¶ 10, ECF No. 37-2, PageID.3828 ("The consular officer cannot consider the visa applicant for a waiver of the Proclamation's entry restrictions unless or until the applicant overcomes their visa ineligibility under INA § 221(g), 8 U.S.C. § 1201(g).").

According to the declaration of government counsel, at least one of the applicants was denied a visa three times, in 2011, 2012, and 2016, all three times for insufficient proof of Ali's identity and relationship to Ahmed. *Ibid.* Presumably the same stated basis of inability to establish familial relationship applies equally to all three applications, but the documents submitted only addressed the reason for denial of one child's application.

Moreover, the Supreme Court's decision in *Trump v. Hawaii* disposes of the plaintiff's facial challenge to the proclamation. *First*, the Supreme Court expressly held that the Proclamation did not exceed the scope of executive authority under the INA, and that it did not otherwise violate any of the provisions of the Act. *Hawaii*, 138 S. Ct. at 2408 (2018) ("By its plain language, § 1182(f) [of the Immigration and Nationality Act] grants the President broad discretion to suspend the entry of aliens into the United States. The President lawfully exercised that discretion based on his findings — following a worldwide, multi-agency review — that entry of the covered aliens would be detrimental to the national interest. And plaintiffs' attempts to identify a conflict with other provisions in the INA, and their appeal to the statute's purposes and legislative history, fail to overcome the clear statutory language."). Thus, claims that the proclamation violated the INA or is otherwise *ultra vires* are foreclosed by the *Hawaii* decision.

*Second*, although other judges in this district have expressed doubts about whether the *Hawaii* decision precludes all constitutional attacks on the Proclamation as a matter of law, *see Arab American Civil Rights League v. Trump*, No. 17-10310, 2019 WL 5684371, at *4 (E.D. Mich. Nov. 1, 2019), this Court views the decision as squarely foreclosing any such claims; the Supreme Court plainly found in *Hawaii* that the Proclamation and other public record materials established a sufficient facial justification for its novel regulations to survive rational basis review. 138 S. Ct. at 2423 (2018) ("[T]he Government has set forth a sufficient national security justification to

survive rational basis review. We express no view on the soundness of the policy. We simply hold today that plaintiffs have not demonstrated a likelihood of success on the merits of their constitutional claim.").

On the question of unreasonable delay, the Court ordered the parties to file supplemental briefs illuminating the status of the petitions in the administrative pipeline, which they did on June 5, 2020. After reviewing those supplemental materials, discussed above, it is apparent that the undisputed record now situates this case in precisely the same posture as the Court confronted in *Hussein v. Beecroft*, No. 17-12356, 2018 WL 3574717, at *4-6 (E.D. Mich. July 25, 2018). The Court's dismissal of the Hussein petitioners' claims on the bases of mootness and consular nonreviewability was affirmed in *Hussein v. Beecroft*, 782 F. App'x 437 (6th Cir. 2019). The same outcome, for the same reasons, now is unavoidable here.

When confronted with a materially indistinguishable administrative record, the court of appeals in *Hussein* readily concluded that the plaintiffs' mandamus claims were moot when the visa applications finally were refused and returned to USCIS. 782 F. App'x at 441-42. "Mootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quotations omitted). The *Hussein* court held that the "[p]laintiffs' mandamus claim is moot because the government fully discharged its clear duty to adjudicate Abdulrab's visa application. As the district court found, the unrebutted evidence showed that Abdulrab was denied a visa multiple times because the consular officer determined she failed to prove she was an 'immediate relative' of Hussein." 782 F. App'x at 441-42. So it is here as well.

The *Hussein* court further held that the substantive basis for the refusal was beyond the Court's power to review, since the refusal was supported by a facially legitimate basis. *Id.* at 442 ("As the Court held in *Kleindienst v. Mandel*, as long as the consular officer's decision was made 'on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification' against the constitutional interests of citizens the visa denial might implicate." (quoting 408 U.S. 753, 770 (1972); citing *Kerry v. Din*, 135 S. Ct. 2128, 2140 (2015) (Kennedy, J., concurring)). Finally, just as is the case here, the court of appeals found that a proposed amendment based on alleged "undue delay" after return of the petition to USCIS would be futile because there were no facts alleged to support any inference of unreasonable delay, particularly given the recency of the return and the large backlog of cases awaiting reexamination by the agency. *Id.* at 444.

In their motion for leave to file an amended complaint, the plaintiffs attempt to resurrect their claims with the sole new allegation that the December 3, 2019 refusal letter did not present a facially valid and legitimate basis for refusal, as it did not cite any statutory provision. But they have not cited any authority holding that a statutory citation is an essential ingredient of a consular refusal communication, where the consular letter plainly stated a basis for refusal within the purview of the statute on point. The letter here stated that the applications were refused because "the consular officer found that [the applicants] are not eligible for the visa category in which [they] appl[ied]." Letter dated Dec. 3, 2019, ECF No. 60-1, PageID.4018. As this Court concluded in Hussein, that is a basis squarely within the ambit of 8 U.S.C. § 1201(g), "which allows several bases for refusal of an application," including where "the consular officer 'has reason to believe that [the applicant] is ineligible' for the status claimed, [and] specifically the status of qualifying as an 'immediate relative' of a U.S. citizen." *Hussein v. Beecroft*, No. 17-12356, 2018 WL

3574717, at *4 (E.D. Mich. July 25, 2018) (quoting 8 U.S.C. § 1201(g)), *aff'd*, 782 F. App'x 437 (6th Cir. 2019).

Justice Kennedy concluded in his concurrence in *Kerry v. Din* that a bare statutory citation was *sufficient* to constitute a facially valid and bona fide reason for refusal where the provision contained one or more bases on which entry could be barred. *Kerry v. Din*, 576 U.S. 86, ---, 135 S. Ct. 2128, 2140 (2015) ("The provisions of § 1182(a)(3)(B) establish specific criteria for determining terrorism-related inadmissibility. The consular officer's citation of that provision suffices to show that the denial rested on a determination that Din's husband did not satisfy the statute's requirements.") (Kennedy, J., concurring); *see also Moreira v. Cissna*, No. 19-1642, 2020 WL 1035246, at *4 (E.D. Pa. Mar. 3, 2020) ("Under *Din* . . . all that is required for the officer's decision to be considered facially legitimate is that the consular officer cites to a statute containing specific criteria pursuant to which he denied an immigrant's visa application."). But no federal court ever has held that a statutory citation is *necessary* to comprise a genuine basis for refusal, where the basis for the refusal otherwise is stated in plain terms clearly falling within the authority of an INA provision on point. Federal courts considering the question have held that a basis for refusal is facially legitimate if it is documented *either* by citation of a statute on point *or* by a factual basis that plainly constitutes a statutory basis for refusing entry. *Ashby v. United States Dep't of State*, No. 18-614, 2019 WL 4451256, at *8 n.8 (M.D.N.C. Sept. 17, 2019) ("'Under the *Din* concurrence, the facially legitimate and bona fide reason test has two components. First, the consular officer must deny the visa under a valid statute of inadmissibility. Second, the consular officer must cite an admissibility statute that specifies discrete factual predicates the consular officer must find to exist before denying a visa, *or there must be a fact in the record that provides at least a facial connection to the statutory ground of inadmissibility*.'") (emphasis added; quoting

*Cardenas v. United States*, 826 F.3d 1164, 1172 (9th Cir. 2016); *see also Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008) ("As set forth in the complaint, Jose was denied a visa on the grounds that the Consulate 'had reason to believe' that he was a controlled substance trafficker. *This is plainly a facially legitimate reason, as it is a statutory basis for inadmissibility*.") (emphasis added; citing 8 U.S.C. § 1182(a)(2)(C)).

III.

As in *Hussein*, all of the plaintiffs' claims here are moot, and any amendment purporting to maintain further claims of unreasonable delay is unsupported by any plausible factual basis given the final action on the petitions by the consular officer, and the recency of the refusal and return of the petitions to USCIS. The plaintiffs' position that the refusal letter was deficient because it included no statutory citation, despite plainly explaining a factual basis for removal that falls within the purview of the pertinent provisions of the INA, is without merit.

Accordingly, it is **ORDERED** that the defendants' motion to dismiss (ECF No. 37) is **GRANTED**.

It is further **ORDERED** that the complaint as to the remaining plaintiffs is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiff's motion for leave to file an amended complaint (ECF No. 61) is **DENIED** for lack of merit in the grounds presented.

It is further **ORDERED** that the plaintiff's motion for a preliminary injunction (ECF No. 3), motion for leave to file additional evidence (ECF No. 17), and motion to transfer venue (ECF No. 50) are **DENIED as moot**.

                                              s/David M. Lawson
                                              DAVID M. LAWSON
Dated:  June 16, 2020                           United States District Judge